WELLS R. McCALL, JR. *v.* SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY

73-108                                    501 S.W. 2d 223

Opinion delivered October 29, 1973
[Rehearing denied December 10, 1973.]

*Jeff Duty,* for appellant.

*Putman, Davis & Bassett,* for appellee.

FRANK HOLT, Justice. A jury awarded $15,000 damages to appellant's guest passenger for injuries sustained in an automobile accident and we affirmed. *McCall v. Liberty,* 248 Ark. 618, 453 S.W. 2d 24 (1970). Appellant,

having liability insurance coverage of only $10,000, paid the $5,000 balance, plus interest and costs. He then brought the present action to recover from appellee, his insurance carrier, that excess of the coverage. Appellant asserted that appellee was negligent in refusing negotiations and settlement within the policy limits. On appeal we first consider the appellant's contention that the court erred in directing a verdict against the appellant.

It is true that an insurer is liable to its insured for any excess judgment of the insured's policy limits if the failure to settle the claim by the insurer is due to fraud, bad faith or negligence. *Tri-State Ins. Co.* v. *Busby,* 251 Ark. 568, 473 S.W. 2d 893 (1971). In the case at bar, only negligence is asserted and, of course, the burden to establish this issue was upon appellant. When we view the evidence, as we must do on appeal, most favorably to appellant against whom the verdict was directed, we are of the view the court correctly held there was no substantial evidence adduced to constitute a factual issue that the appellee was negligent in failing to settle the case within the policy limits.

The factual background surrounding the accident is sufficiently detailed in *McCall* v. *Liberty, supra,* for purposes of this opinion. At that trial for recovery of damages, the insured's guest was represented by two attorneys. In the case at bar only one of those attorneys testified. He wrote a letter to appellee's attorney preceding the trial stating that his client would settle the case "within the policy limits at this time." The letter was made an exhibit to his testimony. He further testified that his only effort to settle "money-wise" on behalf of his client was to write this letter to appellee's attorney to advise him he had the authority to "settle within the limits, whatever those limits might be." In previous correspondence liability was acknowledged as a close question.

The appellant, the insured, testified that at one time, on mistaken information, he had told his insurer's (appellee) attorney he would pay $2,500 out of his own pocket just "to get it over with." The appellee's attorney advised him not to do so as he felt there was no liability.

Appellant was also individually represented by an attorney of his own choice in the original lawsuit. Appellant further testified although he was willing to pay his injured friend $2,500 out of his own pocket, he, as well as his own lawyer, agreed with appellee's attorney there was no liability based upon the allegation of willful and wanton misconduct. His wife was of the same view. It does not appear that appellant's personal attorney ever made a demand for settlement in the case. Appellant acknowledged that he was "willing to go to trial," knowing he would have to pay a judgment in excess of $10,000, because "I really thought we would win it."

In preparation of the trial, the appellee had the benefit of statements from the attending physician, as well as hospital and medical reports. Appellant was interrogated by appellee's investigator and gave him his version of the accident. Furthermore, it was stipulated that a copy of the state police officer's investigation was acquired by the appellee during its investigation. The appellant, the insured, himself expressed the view that he did not know of anything the appellee or his attorney "did wrong" in preparation of the defense to the case and was "well pleased" with the services of his personal attorney as well as appellee's attorneys.

In summary, after investigation of the claim which was made by appellant's guest against him, the appellee (insurer) was of the view that the appellant, its insured, was not guilty of willful and wanton misconduct which is required to make a host liable to his guest passenger. The injured party's attorney, in a letter to appellee's attorney, expressed, *inter alia,* that "the liability is the close question in this matter." The appellant and his personal counsel appear to have agreed with appellee's attorney that the asserted liability, based upon willful and wanton misconduct, was a very close question and a favorable jury verdict would result. In retrospect, appellant expressed no complaint about the preparation and defense of the case. In fact, appellant adduced no evidence from any witness that failure to evaluate and settle the lawsuit constituted negligence. Therefore, we hold, as previously indicated, appellant did not establish evidence legally

sufficient to constitute a factual issue that appellee negligently failed to evaluate and settle the case.

Appellant relies upon *Members Mutual Ins. Co.* v. *Blissett,* 254 Ark. 211, 492 S.W. 2d 429 (1973). We do not consider this case applicable and it is distinguishable. Among the distinctions are that appellee's (insurer) attorney, in the case at bar, never recommended that appellee pay any sum in settlement of the case. In *Blissett* the contrary occurred and, in fact, the insurer's attorney recommended a larger settlement than was offered. There appears to be no conflict in the testimony as to how the accident occurred in the case at bar and there was in *Blissett.* There was only a formal demand here for settlement "within the policy limits," whatever the limits might be, made by the injured party's attorney and at the same time acknowledging it was a close case as to liability. Appellant's personal attorney never made demand for settlement. In *Blissett,* a mistrial had occurred which clearly indicated the possibility of a recovery by the injured guest.

Appellant contends the court erred in excluding the proffered testimony of the state policeman who investigated the accident. The court sustained appellee's objection to the officer's estimated speed of the vehicle, based upon physical facts, at the time of the accident. It was agreed appellee had a copy of the officer's report and the results of his investigation. It appears that the report was not offered in evidence by either party. Even if we should hold that his estimate of speed was admissible, we find it does not bolster appellant's contention that appellee was negligent in handling the case in view of what we have previously said.

Affirmed.